

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2007

# English v. PNC Bank

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3464

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"English v. PNC Bank" (2007). *2007 Decisions.* Paper 1560.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1560

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3464

———

THERESA L. ENGLISH,
                                        Appellant

v.

PNC BANK and PNC BANK CORP., et al.,
                                        Appellees

———

Appeal from the Judgment of the District Court for the Western District of Pennsylvania
(District Court Civil Action No. 99-194)
(District Judge: David S. Cercone)

———

Submitted Under Third Circuit LAR 34.1(a)
February 2, 2007

Before: BARRY, ROTH, *Circuit Judges*, and IRENAS,[*] *Senior District Judge.*

(Filed:  February 28, 2007)

———

OPINION

———


IRENAS, *Senior United States District Judge.*

        In this employment discrimination case, Appellant Theresa English appeals the

_____

        [*] Honorable Joseph E. Irenas, Senior United States District Judge for the District of
New Jersey, sitting by designation.

District Court's Order granting summary judgment to English's former employer, Appellee PNC Bank ("PNC"). Because we conclude that English failed to sustain her burden of putting forth sufficient evidence from which a reasonable factfinder could find that PNC's proffered reason for her termination was pretextual, we will affirm.

## I.

English was hired by PNC in 1967 at the age of 17. Over the course of her employment, she advanced through various managerial positions, achieving the position of Vice President and General Manager of Bank Card Accounting in 1997, at the age of 47. She was able to advance to that position, and earn favorable evaluations of her work, despite having been diagnosed with depression and alcoholism in 1988. English was responsible for the accounting systems for PNC's credit and debit cards.

In 1994, PNC offered a new credit card with an interest rate of 8.9% applied to both purchases and cash advances. After receiving permission from her manager, English opened a credit card account. Two years later, PNC increased the interest rate for cash advances on the account to 21.5%, which English contends was an error. On June 28, 1996, English accessed her own account and closed it. English explains that she did so after her supervisor called her to a meeting to question her about how she came to have the card. She states she closed the account because she did not need the additional credit and thought it was the prudent decision until her supervisor had completed the

2

inquiry into the situation.[1]

In either June or July, 1996, English says she discovered that PNC had treated some of her credit card transactions as cash transactions which carried the allegedly erroneous 21.5% rate, instead of merchandise purchases to which the 8.9% rate applied.[2] English attempted to resolve the problem by contacting the third party vendor who serviced her account, but to no avail. Thus, in September, 1996, English directed her subordinate employee to access English's account, which remained closed at the time, to transfer her cash advance balance to her purchases balance.[3] English did not receive permission to make the change to her account and does not dispute that the adjustment to her account was not accomplished through the proper channels. Shortly after the adjustment was made, English reopened her account.

On January 29, 1997, each of the PNC employees who had used the 8.9% credit accounts, including English, were asked to meet individually with their respective supervisors to discuss the situation. In the meeting, English explained that she took the actions on her account because she believed an error had occurred. She acknowledged

---

[1] Approximately 11 other PNC employees obtained PNC credit cards with the 8.9% rate. PNC questioned each of them about their accounts.

[2] Notably, the undisputed record evidence demonstrates that English drafted checks to purchase merchandise, then used her credit card account's overdraft protection to cover the checks when her checking account had an insufficient balance. (Supp. App. at 61-69). The overdraft protection transactions were treated as cash advances, while English's purchases from retailers were treated as purchases. (Id.)

[3] English's October 6, 1996, credit card statement reflects an "adjustment" of $4,631.71. (Supp. App. at 79)

that she knew she had not followed the proper procedure for making the adjustment but explained that she was too busy to pursue the proper course. English was immediately placed on administrative leave. A few weeks later she was terminated.

PNC asserts that English was terminated because she violated PNC's Code of Ethics which reads, in pertinent part,

> You owe PNB Bank and its clients undivided loyalty. You should not have an interest that conflicts with . . . PNC Bank or its clients. . . . A conflict of interest exists when: You engage in a personal activity or have a personal interest that may influence your decisions when acting for PNC or that may be at odds with PNC's interests; or You use your position with PNC or use PNC's confidential information to benefit yourself rather than PNC. . . .Some illustrations of areas where potential conflicts of interests could occur and PNC's policies are: . . .You may not act on behalf of PNC in any transaction involving a family member of your immediate family or in any situation where you or a member of your immediate family has a personal or financial interest.

(App. at 534-536) English asserts that she was terminated because of her age and her alleged disabilities based on depression and alcoholism.

English's Complaint asserted violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et. seq.; and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951-963.[4] The District Court granted PNC's Motion for Summary Judgment, holding that English failed to establish a prima facie case under the ADA,

---

[4] The Complaint also asserted violations of ERISA, 29 U.S.C. § 1001 et. seq. and Pennsylvania's Wage Payment and Collection Law, 43 P.S. § 260.1 et. seq., but those claims were dismissed pursuant to the parties' stipulation.

4

ADEA, or PHRA, and even if she had, she failed to put forth sufficient evidence establishing that PNC's reason for her termination was pretextual. We will affirm the judgment of the District Court on the ground that English has failed to establish pretext.[5]

## II.

Because we are reviewing a grant of summary judgment, our review is plenary. *Detz v. Greiner Indus.*, 346 F.3d 109, 114 (3d Cir. 2003). Drawing all reasonable inferences in favor of the party against whom judgment is sought, judgment pursuant to Federal Rule of Civil Procedure 56 should be granted only when no issues of material fact exist and the party for whom judgment is entered is entitled to judgment as a matter of law. *Id.* When "the plaintiff fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial," summary judgment for the defendant is warranted. *Id.* (internal quotations omitted).

## III.

In ADA, ADEA, and PHRA cases, once the employer puts forth a legitimate, nondiscriminatory reason for an employee's termination, the employee bears the burden of proving that the employer's reason is merely pretext for a discriminatory motive. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466-67 (3d Cir. 2005); *Shaner v. Synthes (USA)*, 204 F.3d 494, 501 (3d Cir. 2000). The employee must show "'such weaknesses,

---

[5] Accordingly, we express no opinion regarding the District Court's alternative holdings.

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence.'" *Kautz*, 412 F.3d at 67 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)); *Shaner* 204 F.3d at 501 (quoting *Fuentes*).  She may accomplish this by establishing facts from which a reasonable factfinder could conclude that the employer's reason "was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Kautz*, 412 F.3d at 67.

English has not put forth any evidence that PNC's reason for her termination– conducting transactions in her own account in violation of the company Code of Ethics– was not the true reason for her termination.  English first asserts that the Code of Ethics does not specifically prohibit altering interest rates on accounts to correct errors, and therefore there is a factual dispute as to whether English actually violated the Code of Ethics.  This argument fails because it is undisputed that English personally, and through the actions of a subordinate whom she directed, conducted transactions in her own account.  The Code of Ethics prohibits employees from acting "on behalf of PNC in any transaction . . . or in any situation where you . . . ha[ve] a personal or financial interest." English's actions fit squarely within the description of a "conflict of interest," as described by the Code of Ethics.

Second, English points to asserted inconsistencies in PNC's discipline of employees who conducted transactions in their own or family members' accounts. English asserts that her termination was disproportionately harsh because several other

6

employees conducted similar transactions but were not terminated. Most notably, English points to two other employees who were given written warnings for conducting transactions in family members' accounts. One branch manager instructed a subordinate to remove fees from the manager's husband's checking account. Another branch manager removed a "hold" from her son's checking account. Both managers received written warnings.

This evidence alone is insufficient because, while it may cast doubt on the proportionality of English's punishment, it does not demonstrate that PNC had an illegal motive. *See Kautz,* 412 F.3d at 467 ("pretext is not shown by evidence that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.")(internal quotations omitted). The fact that PNC may have chosen to treat employees differently for similar ethics violations cannot support a reasonable inference that it acted with discriminatory animus.[6] This conclusion is bolstered by the fact that in the same year English was terminated, twenty other employees were terminated for transacting business in their own accounts.[7]

---

[6] Ethics violations involve inherently fact-specific inquiries and require the careful exercise of judgment to an extent that renders any meaningful comparison of other employees' situations and punishments exceedingly difficult. Any apparent inconsistencies are not so inherently suspicious as to support an inference of discriminatory motive in this case.

[7] English relies on the fact that seven of the twenty employees were over forty years old to argue that PNC discriminates against employees over forty. This evidence is

7

English has failed to put forth sufficient evidence from which a reasonable factfinder could conclude that PNC acted with discriminatory animus (i.e., on the basis of either her age or her asserted disabilities) when it terminated her.  The District Court properly granted summary judgment to PNC.  The judgment will be affirmed.

---

8

---

insufficient to carry English's summary judgment burden.